UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TROY JACKSON,

    Plaintiff,

v.                                                                               Case No: 8:17-cv-1673-T-36TGW

SECRETARY OF THE DEPARTMENT OF
VETERANS AFFAIRS,

    Defendant.
_____/

## ORDER

This cause comes before the Court upon Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 14) and Plaintiff's Response in Opposition (Doc. 16). For the reasons that follow, the Motion to Dismiss will be granted.

**I.    BACKGROUND**

    **A.    Facts[1]**

This action arises from allegations that Plaintiff Troy Jackson ("Jackson") was subjected to discrimination based on physical disability, race, and gender, a hostile work environment, and retaliation during a five and a half year period while employed by the Department of Veterans Affairs' Office of Resolution Management (the "ORM") in Pinellas County, Florida. Doc. 12.

On July 23, 2007, Jackson's manager, Winston Johnson ("Johnson"), sent Jackson a sexually inappropriate e-mail. *Id.*, ¶ 10. In December 2007, Jackson received a "fully successful performance appraisal" but did not receive a "performance award." *Id.*, ¶ 11. Three of Jackson's peers, all women, received performance awards. *Id.* On August 13, 2008, Johnson sent Jackson

---

[1] The following statement of facts is derived from the Amended Complaint, doc. 12, the allegations of which must be taken as true and read in the light most favorable to the plaintiff when considering a motion to dismiss. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992).

1

another sexually explicit e-mail. *Id.*, ¶ 12. In October 2008, Jackson was not selected to fill a vacant position as an EEO counselor. *Id.*, ¶ 13. That same month, Jackson received another fully successful performance appraisal but again did not receive a performance award. *Id.*, ¶ 14. However, his "similarly situated peers" did receive performance awards. *Id.* In December 2008, Johnson told Jackson he was only hired because two female employees thought Jackson was handsome. *Id.*, ¶ 15.

Twice more, in January 2009 and July 2009, Jackson was not selected to fill positions as an EEO specialist, even though he was highly qualified for the positions. *Id.*, ¶¶ 16, 18. In about July 2009, another employee cautioned Jackson that Johnson and another manager, Roger Evans ("Evans"), were "out to get him any way that they could." *Id.*, ¶ 17. On October 5, 2009, Evans apologized to Jackson for being "singled out" by management. *Id.*, ¶ 19.

That same month, Jackson received another fully successful performance appraisal and again did not receive a performance award. *Id.*, ¶ 20. However, other "similarly situated female [a]dministrative [a]ssistants" who performed the same quality and quantity of work as Jackson received performance awards. *Id.*

On December 11, 2009, Johnson angrily commented to Jackson that he needed employees who could be present on a daily basis. *Id.*, ¶ 21. Johnson's comment was related to Jackson's regular medical appointments related to his disability. *Id.* That same day, Johnson told Jackson he might place him on sick leave certification and would possibly have him "undergo fitness for duty assessment." *Id.*, ¶ 22.

On June 28, 2010, Johnson and another employee, Diana Ford ("Ford"), were sitting in Jackson's office when he arrived for work. *Id.*, ¶ 23. Johnson and Ford clapped their hands and stated that they knew Jackson could make it to work on time. *Id.* Other employees who were also

late to work did not receive this treatment. *Id.*

In June 2010, Jackson was not selected for an EEO specialist position even though he was highly qualified for the position. *Id.*, ¶ 24. Another vacancy for an EEO specialist arose in September 2010; however, the job was posted for less than 24 hours in order to preclude Jackson from applying. *Id.*, ¶ 25.

In October 2010, Jackson received another fully successful performance appraisal and did not receive a performance award. *Id.*, ¶ 26. However, Jackson's female co-workers, who did the same quality and level of work, did receive performance awards. *Id.* On June 10, 2011, Jackson was "issued a written counseling regarding performance and behavioral expectations." *Id.*, ¶ 27.

In August 2012, Jackson was not selected for a position as an administrative assistant, although he was highly qualified for this position. *Id.*, ¶ 28. On November 13, 2012, Jackson received another fully successful performance evaluation but did not receive a performance award. *Id.*, ¶¶ 29-30. Jackson's similarly situated peers, who were women, received higher annual performance evaluations and performance awards for performing the same amount of work as Jackson. *Id.* On January 16, 2013, Jackson again was not selected for a "GS-8, position, vacancy # VO726044." *Id.*, ¶ 31.

### B. Procedural History

Jackson initially contacted the ORM[2] and EEO counselor Jennifer Skeel on December 6, 2012. Doc. 14-1. During the initial contact, Jackson alleged nine separate acts of discrimination. Doc. 12, ¶ 4. Jackson filed a Complaint of Employment Discrimination (the "formal complaint")

---

[2] The ORM is the Department of Veterans Affairs' liaison with oversight responsibility for processing external discrimination complaints. The ORM "provides Equal Employment Opportunity ("EEO") complaint processing services within the Department of Veterans Affairs." This includes EEO counseling, alternative dispute resolution, and investigation. U.S. Department of Veterans Affairs, ORM, VA.gov, https://www.va.gov/orm/ (last visited Aug. 1, 2018).

with the ORM on January 28, 2013. *Id.*; Doc. 14-1, p. 2. On March 4, 2013, the ORM sent Jackson a letter acknowledging that it received his formal complaint. Doc. 12, ¶ 4.

Jackson informed the ORM of seventy-two specific events, spanning a time period from July 23, 2007 to January 16, 2013, that he believed evidenced a hostile work environment. *Id.*, ¶¶ 4-5. The ORM dismissed some of Jackson's claims as untimely, "but it accepted all of the claims asserted . . . as part of an overall hostile work environment claim." *Id.*, ¶ 5.

The ORM and the EEOC failed to complete its investigation within 180 days and the EEOC issued a final decision to Jackson informing him of his right to commence a lawsuit. *Id.*, ¶ 6. Jackson initiated the instant lawsuit against the Secretary of the Department of Veterans Affairs (the "Secretary") on July 12, 2017. Doc. 1. Jackson filed an Amended Complaint on December 15, 2017. Doc. 12.

The Amended Complaint sets forth four counts: "Count I Disparate Treatment Based Upon Race Gender Reprisal and Disability"; "Count II Failure to Provide a Reasonable Accommodations [sic] (Unreasonable Delay)"; "Count III Hostile Work Environment Based Upon Gender"; and "Count IV Reprisal Nonselection." *Id.*, ¶¶ 32-59.

Specific to his first claim for disparate treatment, Jackson alleges as follows. Jackson is "in a protected class, he is male and he has a disability." *Id.*, ¶ 33. Jackson was qualified for each of the positions he applied for from 2007 to January 2013. *Id.*, ¶ 34. Jackson suffered "adverse actions." *Id.*, ¶ 35. He was "scrutinized and micromanaged at a level that other similarly situated employees were not." *Id.* Jackson was also "repeatedly given . . . unfairly and inaccurately low annual performance evaluations" which led to the denial of performance awards. *Id.*, ¶ 36. This included his November 13, 2012 fully successful performance appraisal. *Id.*, ¶ 37. Based on that evaluation, Jackson did not receive a performance award. *Id.* However, "other administrative

4

assistants" who "are not disabled or regarded as disabled or who has [sic] not previously participated in protected activity" were evaluated more favorably. *Id.*, ¶ 38.

As for Jackson's second claim for failure to provide a reasonable accommodation, he alleges as follows. Jackson is a qualified individual with a disability who has a well-documented history of back and foot problems that require regular medical attention. *Id.*, ¶ 40. Jackson requested an ergonomic workstation or desk that would allow him to stand while he typed at his computer. *Id.*, ¶¶ 41, 46. The cost of the desk was "quite reasonable" and the Secretary could have easily provided it. *Id.*, ¶ 41. From 2010 to 2013, Jackson submitted no less than four requests for this accommodation. *Id.*, ¶ 42. When Jackson made his first request on March 31, 2010, he attached a copy of a physician's note. *Id.*, ¶ 43. Jackson also made requests on June 3, 2010 and March 30, 2011. *Id.*, ¶¶ 45-46. On May 8, 2013, Jackson made a fourth request. *Id.*, ¶ 47. It took the Secretary another five months to provide the accommodation. *Id.* Once the desk arrived, it "sat in a box for an additional thirty days because the [Secretary] did not think it was important enough to have someone assemble the desk." *Id.*

As for Jackson's third claim, hostile work environment, he alleges as follows. Jackson "is in a protected class, he is a male." *Id.*, ¶ 49. Jackson was subjected to "unwelcome harassment" when Johnson sent him sexually explicit e-mails. *Id.*, ¶ 50. Jackson did not give Johnson permission to send him these e-mails, and doing so was "likely a misuse of governmental equipment." *Id.*, ¶¶ 51-52. This harassment was based on Jackson's gender. *Id.*, ¶ 53. Johnson admitted that he never sent sexually explicit e-mails to the female employees that he supervised. *Id.* Rather, he only sent such e-mails to Jackson and another male employee. *Id.* Johnson's actions were "severe and pervasive enough to interfere with [Jackson's] ability to perform his job duties." *Id.*, ¶ 54. Johnson was "quite aware of the gross inappropriateness of his repeated actions." *Id.*, ¶

55.

Jackson's fourth claim, "reprisal nonselection," provides as follows. Jackson participated in protected activity by filing the formal complaint. *Id.*, ¶ 57. Jackson filed his formal complaint prior to applying for "the Administrative Assistant GS-8 position" with a vacancy number of "ORM-DSP-12-VO726044."[3] *Id.* Jackson was well-qualified for that position, but the Secretary instead hired someone who "had not previously participated in protected activity." *Id.*, ¶¶ 57-58. Those in charge of hiring "were aware of" Jackson's formal complaint, and there is "a causal nexus between [Jackson] participating in protected activity and him not being selected" for the position. *Id.*, ¶ 59.

Jackson seeks injunctive relief, compensation for emotional pain and anguish, appointment to the "Administrative Assistant Position the Defendant unlawfully denied" to Jackson, and reasonable attorney's fees and costs. *Id.*, p. 10. The Secretary filed a Motion to Dismiss the Amended Complaint, and Jackson filed a Response in Opposition. Doc. 14; Doc. 16.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[3] This position is apparently the one for which Jackson was not selected on January 16, 2013. *Id.*, ¶¶ 31, 57.

6

inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

### III. DISCUSSION

#### A. Exhaustion of Administrative Remedies

Before filing a Title VII lawsuit,[4] an aggrieved federal employee must first exhaust an administrative process.[5] *Brown v. Snow*, 440 F.3d 1259, 1262 (11th Cir. 2006). At the outset, a federal employee must contact an EEO counselor within 45 days of a prohibited act to initiate administrative review so that the relevant agency may attempt to resolve the matter informally. *Shiver v. Chertoff*, 549 F.3d 1342, 1344 (11th Cir. 2008) (citing 42 U.S.C. § 2000e-16; 29 C.F.R. § 1614.105(a)(1)).

"Each discrete discriminatory act starts a new clock . . . ." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Thus, a federal employee must act within 45 days after each discrete[6] discriminatory act. *Terhune v. Potter*, No. 8:08-cv-1218-T-23MAP, 2009 WL 2382281, at *3 (M.D. Fla. July 31, 2009) (citing *Morgan*, 536 U.S. at 113). Generally, failure to initiate contact with an EEO counselor within 45 days of a discrete act will result in a claim based on that act being barred for failure to exhaust administrative remedies. *Litman v. Sec'y, of the Navy*, 703 Fed. Appx. 766, 770 (11th Cir. 2017) (citing *Shiver*, 549 F.3d at 1344).

The Secretary directs the Court to Jackson's formal complaint, which it attaches to its

---

[4] Jackson's Amended Complaint does not clearly specify the federal statutory law that is the basis for each of his claims. *See* Doc. 12, pp. 6-10. Nonetheless, Jackson alleges that he timely contacted the ORM and cites to Title VII of the Civil Rights Act of 1964 in the jurisdictional section of the Amended Complaint. Doc. 12, ¶¶ 3-4.
[5] Jackson also apparently attempts to make a claim under the Rehabilitation Act, 29 U.S.C. § 794(a). *See* Doc. 12, pp. 7-8. The Rehabilitation Act requires a plaintiff to exhaust administrative remedies "in the manner prescribed by Title VII . . . ." *Gaillard v. Shinseki*, 349 Fed. Appx. 391, 392 (11th Cir. 2009). Accordingly, the foregoing analysis is relevant to each of Jackson's claims, whether stated under Title VII or the Rehabilitation Act.
[6] Discrete acts include incidents of termination, failure to promote, denial of transfer, and refusal to hire. *Morgan,* 536 U.S. at 115.

7

Motion to Dismiss. Doc. 14-1. The formal complaint shows that Jackson's initial contact with the ORM was on December 6, 2012. *Id.* The Secretary argues that because Jackson did not initiate contact with an EEO counselor until that date, any actions occurring more than 45 days prior—that is, before October 22, 2012—cannot be used to support Jackson's claims. *Id.*; Doc. 14, pp. 2-3. The Secretary further argues that because Jackson's claims rely predominantly on untimely allegations, Jackson's Amended Complaint should be dismissed. *Id.*[7]

Jackson responds that the Court should not consider the Secretary's timeliness argument because (1) the Court must accept Jackson's well-pleaded facts as true and disregard the formal complaint because it is not within the four corners of Jackson's Amended Complaint and (2) timeliness is an affirmative defense that is more appropriately addressed in a motion for summary judgment. Doc. 16, pp. 3-5. This argument is without merit. *See Tillery v. U.S. Dep't of Homeland Sec.*, 402 Fed. Appx. 421, 424 (11th Cir. 2010) (affirming district court's consideration of parties' evidence regarding the plaintiff's exhaustion of administrative remedies on a motion to dismiss without converting it into a motion for summary judgment). *See also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (holding that a district court may consider a document attached to a motion to dismiss without converting it into one for summary judgment when the document is central to a plaintiff's claim and is undisputed).

Jackson does not dispute the authenticity of the formal complaint, nor does Jackson provide any allegations or evidence suggesting other dates of EEO counseling.[8] And, Jackson's allegation that he "exhausted the requisite administrative remedies" and "timely contacted [the ORM] within forty-five days of being discriminated against or retaliated against" is conclusory and vague, and

---

[7] The Secretary does not specify which counts of the Amended Complaint should be dismissed. *See* Doc. 14.
[8] Jackson's timeliness allegations, that he filed the formal complaint on January 28, 2013 and that the Secretary sent him a letter acknowledging receipt of the formal complaint on March 4, 2013, do not contradict the evidence that Jackson did not consult the ORM for EEO counseling until December 6, 2012. Doc. 12, ¶ 4; Doc. 14-1.

therefore insufficient in light of the Secretary's evidence. Doc. 12, ¶ 4; Doc. 14-1.

Jackson's Amended Complaint alleges that the ORM "dismissed some [of] the individuals [sic] claims as being untimely, but it accepted all of the claims asserted in, Claim I, as part of an overall hostile work environment claim." Doc. 12, ¶ 5. An adjudication of timeliness[9] by the ORM or the EEOC is binding on a district court. *Ramirez v. Sec'y, U.S. Dep't of Transp.*, 686 F.3d 1239, 1251-54 (11th Cir. 2012). However, acceptance of a claim for investigation and an adjudication of timeliness are not the same. *Fortson v. Carlson*, 618 Fed. Appx. 601, 605 (11th Cir. 2015) (finding the district court could properly address the issue of timeliness where the plaintiff's right-to-sue letter from the EEOC did not address the issue). Here, Jackson does not allege that the ORM or the EEOC made an affirmative finding of timeliness. Nor does Jackson suggest that this Court should equitably toll the 45-day limitation period. *See Tillery*, 402 Fed. Appx. at 424. Based on the above, the Court agrees with the Secretary that Jackson cannot use the allegations describing occurrences before October 22, 2012 to support his claims because they have not been administratively exhausted.

Less clear is whether Jackson's allegations describing discrete acts after December 6, 2012 are also unexhausted. The Court is aware of only one instance, December 6, 2012, when Jackson consulted an EEO counselor in the ORM. Doc. 14-1. Yet, Jackson's Amended Complaint describes discrete acts that occurred after December 6, 2012. *E.g.,* Doc. 12, ¶ 31 (describing an act of non-promotion in 2013). As discussed *supra*, Jackson was required to seek EEO counseling within 45 days of each discrete act in order to maintain a claim related to such an act. *Morgan*, 536 U.S. at

---

[9] The relevant agency or the EEOC "shall extend the 45-day time limit" in the following circumstances: "[W]hen the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission." 29 C.F.R. § 1614.105(a)(2). Jackson does not allege that the ORM or the EEOC granted an extension of the 45-day time limit.

113. *See also Terhune*, 2009 WL 2382281, at *3 (citing *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 n.5 (11th Cir. 2002)). However, because the parties do not raise the issue, the Court will assume without deciding, for purposes of the motion to dismiss only, that Jackson's allegations describing post-December 6, 2012 occurrences are timely.

### B. Jackson's Claims

Many of Jackson's four claims are time-barred because they rely on allegations describing occurrences that were not administratively exhausted. The few allegations that are timely are generally conclusory. Further complicating matters, Jackson's Amended Complaint is generally disorganized and unclear. None of his four counts set forth the federal statutory provisions[10] under which he seeks relief.

For his first claim, Jackson alleges "Disparate Treatment Based Upon Race Gender Reprisal and Disability." Doc. 12, p. 6. Again, Jackson does not cite to any statutory law, leaving the Court to sort out under what federal provision he attempts to make a cognizable claim for "disparate treatment based upon reprisal." *See id.* Similarly, Jackson lumps together what appears to be a claim for disability discrimination under the Rehabilitation Act with his claim for disparate treatment based on race and gender under Title VII. *Id.* Jackson then makes a separate claim for failure to provide a reasonable accommodation (presumably under the Rehabilitation Act) in Count II and a separate claim for "reprisal nonselection" (presumably under Title VII) in Count IV. *Id.*,

---

[10] Various federal laws prohibit discrimination against federal employees and applicants. Title VII prohibits federal employers from discriminating against employees on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). Under the Rehabilitation Act, 29 U.S.C. § 794(a), federal employers are also prohibited from discriminating against employees on the basis of disability. *Gooden v. IRS*, 679 Fed. Appx. 958, 964 (11th Cir. 2017). Moreover, the anti-retaliation provision of Title VII forbids retaliation against an individual who, *inter alia*, has "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. 42 U.S.C. § 2000e-3(a). Similarly, the Rehabilitation Act, which incorporates the anti-retaliation provision from § 12203(a) of the Americans with Disabilities Act (the "ADA"), prohibits discrimination "against an individual because such individual has opposed any act or practice made unlawful . . . ." *Burgos-Stefanelli v. Sec'y, U.S. Dep't of Homeland Sec.*, 410 Fed. Appx. 243, 245 (11th Cir. 2011) (citing 29 U.S.C. §§ 791(g), 793(d), 794(d) and 42 U.S.C. § 12203(a)).

pp. 7-8, 9-10. These issues are not mere technical defects—the standards under which Jackson must eventually prove his claims have the potential to differ significantly. *See, e.g., Babb v. Sec'y, Dep't of Veterans Affairs*, __ Fed. Appx. __, 2018 WL 3434500, at *4-6 (11th Cir. July 16, 2018) (holding that a claim for gender discrimination requires only that a plaintiff offer evidence that a protected characteristic was a motivating factor for the defendant's adverse employment action, but that a claim for retaliation requires a plaintiff to offer evidence that the defendant's desire to retaliate was the but-for cause of the adverse employment action). Indeed, Jackson's Amended Complaint is, in many respects, akin to a shotgun pleading.[11]

Viewing the Amended Complaint in a light most favorable to Jackson, it fails to state a claim. Accordingly, and as described in more detail below, Jackson's Amended Complaint is due to be dismissed. However, the Court will grant Jackson leave to file a Second Amended Complaint to the extent he is able to provide timely, factual allegations to support plausible claims for relief.

1. *Count I: "Disparate Treatment Based Upon Race Gender Reprisal and Disability"*[12]

To state a claim for disparate treatment based on race or gender under Title VII, a plaintiff must allege that he or she: (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was treated less favorably than a similarly-situated individual outside the protected class. *Arafat v. Sch. Bd. of Broward Cnty.*, 549 Fed. Appx. 872, 874 (11th Cir. 2013) (quotation marks omitted). At the pleading stage, a complaint need only "provide enough factual matter (taken as true) to suggest intentional" discrimination. *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015). *Accord Equal Emp't*

---

[11] The Eleventh Circuit has "condemned shotgun pleadings time and again, and [has] repeatedly held that a District Court retains authority to dismiss a shotgun pleading on that basis alone." *Jackson v. Bank of America, N.A.*, __ F.3d __, 2018 WL 3673002, at *5 (11th Cir. Aug. 3, 2018).
[12] Because Jackson makes separate claims for retaliation and disability discrimination in counts IV and II, respectively, the Court will analyze those issues in those counts. In addressing Count I, the Court discusses only Jackson's claims for race discrimination and gender discrimination.

*Opportunity Comm'n v. Catastrophe Mgmt. Solutions*, 852 F.3d 1018, 1024 (11th Cir. 2016) (stating that a complaint must contain sufficient factual allegations to set out a plausible claim that the defendant intentionally discriminated against the plaintiff, individually, because of a protected factor).

The Court first addresses Jackson's claim for disparate treatment based on race. The only time Jackson ever discusses race in the Second Amended Complaint is in the heading of Count I. Otherwise, Jackson does not allege his race and provides no allegations even suggesting that race was a factor in the Secretary's alleged adverse actions. Jackson fails to state a claim for disparate treatment based on race.

Jackson's allegations that he was subject to disparate treatment based on his gender also fall short. The majority of Jackson's disparate treatment allegations are untimely, as most acts are alleged to have occurred before October 22, 2012. Doc. 12, ¶¶ 7-28, 34. Jackson's remaining allegations, either timely or undated, are insufficient to nudge Jackson's claim "across the line from conceivable to plausible." *Twombly,* 550 U.S. at 547. Jackson fails to connect his alleged protected status with the Secretary's alleged "adverse actions" other than by conclusion, which is insufficient to survive a motion to dismiss. *E.g.*, doc. 12, ¶ 9 ("[T]he Plaintiff was subjected to a series of actions that he regarded to be harassment based upon his gender."). Moreover, Jackson fails to describe how he was similarly situated to the female employees that allegedly received better treatment. *See Holifield v. Reno*, 115 F.3d 1555, 1563 (11th Cir. 1997) (abrogated on other grounds) (explaining that employees with whom a plaintiff compares his treatment must be similarly situated to the plaintiff in all aspects). Jackson cannot maintain a claim for disparate treatment based on gender under Title VII with these allegations. Count I is due to be dismissed.

2. *Count II: "Failure to Provide a Reasonable Accommodations [sic] (Unreasonable Delay)"*

The Rehabilitation Act, 29 U.S.C. § 794(a), "provides a federal employee's exclusive remedy for disability-related employment discrimination." *Tarmas v. Mabus*, No. 3:07-CV-290-J-32TEM, 2010 WL 3746636, at *3 (M.D. Fla. Sept. 21, 2010), *aff'd sub nom. Tarmas v. Sec'y of Navy*, 433 Fed. Appx. 754 (11th Cir. 2011). To state a claim for discrimination under the Rehabilitation Act,[13] a plaintiff must allege that he or she: "(1) is 'handicapped' within the meaning of the Act and relevant regulations, (2) is 'otherwise qualified' for the position in question, (3) worked for a Program or activity that received federal financial assistance[,] and (4) was adversely treated solely because of his or her handicap." *Jackson v. Veterans Admin.*, 22 F.3d 277, 278 (11th Cir. 1994). "An employer unlawfully discriminates against an otherwise qualified person with a disability when it fails to provide a reasonable accommodation for the disability, unless doing so would impose an undue hardship on the employer." *Boyle v. City of Pell City*, 866 F.3d 1280, 1289 (11th Cir. 2017). This District has previously recognized that "an unreasonable delay may amount to a failure to provide [a] reasonable accommodation." *Russell v. City of Tampa*, No. 8:14-cv-814-T-17AEP, 2015 WL 5871189, at *3 (M.D. Fla. Oct. 5, 2015) (collecting cases). However, determining whether a delay is unreasonable requires a fact specific inquiry. *See id.*

Nearly all of Jackson's allegations which could be related to his disability claim occurred before October 22, 2012. Doc. 12, ¶¶ 7-8, 11, 13-14, 16-28, 39-46. After excluding Jackson's untimely allegations, few allegations remain. Those allegations, which are either timely or

---

[13] "Discrimination claims under the Rehabilitation Act are governed by the same standards used in cases brought under the [ADA]. Thus, cases decided under the ADA and the Rehabilitation Act may be used interchangeably." *Dickerson v. Sec'y, Dep't of Veterans Affairs Agency,* 489 Fed. Appx. 358, 360, n.2 (11th Cir. 2012) (internal citations omitted).

undated, are insufficient to salvage Jackson's claim. Similar to Jackson's disparate treatment claim, Jackson fails to connect his alleged disability with the Secretary's actions. Jackson does not allege that the Secretary treated him adversely "solely because of" his disability, *Jackson*, 22 F.3d at 278, or even that his disability was a factor in the Secretary's treatment of him. Doc. 12, ¶¶ 29-31, 35, 40-41, 47. Moreover, Jackson does not provide sufficient factual matter from which it may be plausible to infer that a five to six month delay in obtaining the accommodation, a desk, was unreasonable. Accordingly, Jackson fails to state a claim under the Rehabilitation Act, and Count II is due to be dismissed.

       3. *Count III: "Hostile Work Environment Based Upon Gender"*

The Supreme Court has held that "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated," thereby giving rise to a hostile work environment claim. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations and quotations omitted). Hostile work environment claims involve repeated conduct and are "composed of a series of separate acts that collectively constitute one unlawful employment practice." *Morgan*, 536 U.S. at 115, 117 (internal quotation marks omitted). Recognizing the nature of such claims, the Supreme Court has held that a hostile work environment claim will not be time barred "so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Id.* at 122. However, untimely allegations of discrete discriminatory acts are time-barred "even when they are related to acts alleged in timely filed charges." *Id.* at 113.

Jackson bases his hostile work environment claim entirely upon the actions of his manager, Johnson, who "repeatedly and inappropriately sent [Jackson] sexually explicit e-mails." Doc. 12,

¶ 50. Jackson provides two instances where Johnson sent sexually explicit e-mails: on July 23, 2007 and August 13, 2008. Doc. 12, ¶¶ 10, 12, 48-55. Both instances occurred well before October 22, 2012. Thus, even assuming the July 23, 2007 and August 13, 2008 occurrences were not "discrete acts" under *Morgan* and could therefore be considered part of a continuing violation, both occurrences are time-barred because they do not appear to relate to any other acts which are part of the same unlawful employment practice and which fall within the 45-day time period. *Morgan*, 536 U.S. at 122. Accordingly, Jackson fails to state a claim for hostile work environment and Count III is due to be dismissed.

    4. *Count IV: "Reprisal Nonselection"*

The anti-retaliation provision of Title VII forbids retaliation against an individual who, *inter alia*, has "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. 42 U.S.C. § 2000e-3(a). To state a claim for retaliation under Title VII, a plaintiff must allege that (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) a causal link exists between the adverse employment action and the protected activity. *Bryant v. Jones*, 575 F.3d 1281, 1307-08 (11th Cir. 2009). A denial of a promotion may be considered an adverse employment action. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001). Similarly, the Rehabilitation Act, which incorporates the anti-retaliation provision from § 12203(a) of the ADA, prohibits discrimination "against an individual because such individual has opposed any act or practice made unlawful by" the ADA. *Burgos-Stefanelli*, 410 Fed. Appx. at 245. Retaliation claims under the Rehabilitation Act are analyzed under the same framework used to assess Title VII retaliation claims. *Id.*

Jackson's retaliation claim is based entirely on the allegation that he was not selected for the "Administrative Assistant GS-8 position," vacancy number "ORM-DSP-12-VO726044." Doc.

12, ¶¶ 57-59. This allegation appears to describe the same event as that described in an earlier allegation in Jackson's Amended Complaint, which provides that "[o]n January 16, 2013, [Jackson] was again non-selected for a GS-8, position, vacancy # VO726044. *Id.*, ¶ 31.

Assuming *arguendo* that this discrete act, failure to promote, described in Jackson's allegation was exhausted, Jackson would still fail to state a claim for retaliation because his allegations are confusing and contradictory. Jackson claims that he was not selected for that particular administrative assistant position based on his participation in a protected activity (namely, filing a formal complaint). *Id.*, ¶¶ 57-59. To that end, Jackson also alleges that he filed his formal complaint *before* applying for the administrative assistant position. *Id.*, ¶ 57. But Jackson's other allegations and the formal complaint provide otherwise. *Id.*, ¶ 31; Doc. 14-1. As discussed, Jackson filed his formal complaint on January 28, 2013. Doc. 14-1, p. 2. And, Jackson alleges that he was "non-selected for a GS-8 position, vacancy number VO726044, on January 16, 2013." Doc. 12, ¶ 31. Clearly, then, Jackson would have applied for the position on or before January 16, 2013, before the date he filed his formal complaint.

Jackson's allegations relative to his retaliation claim are either mistaken or unclear and therefore fail to plausibly state a claim. For this reason, Count IV of Jackson's Amended Complaint is due to be dismissed.

Accordingly, it is

**ORDERED**:

1. Defendant's Motion to Dismiss (Doc. 14) is **GRANTED.**

2. Plaintiff's Amended Complaint (Doc. 12) is **DISMISSED** without prejudice. Plaintiff is granted leave to file a Second Amended Complaint, which cures the deficiencies addressed in this Order, **within FOURTEEN (14) DAYS** from the

date of this Order. Failure to file a Second Amended Complaint within the time permitted will result in dismissal of this action without further notice.

**DONE AND ORDERED** in Tampa, Florida on August 27, 2018.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any