UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TROY JACKSON,

    Plaintiff,

v.                                                   Case No: 8:17-cv-1673-T-36TGW

SECRETARY OF THE DEPARTMENT OF
VETERANS AFFAIRS,

    Defendant.
_____/

## ORDER

This cause comes before the Court upon Defendant's Motion for Summary Judgment (Doc. 52), Plaintiff's response in opposition (Doc. 56), Defendant's reply in support of its motion (Doc. 57), and the parties' Stipulation of Agreed Material Facts (Doc. 55). Defendant argues it is entitled to summary judgment on Plaintiff's remaining two claims because Plaintiff fails to establish a *prima facie* case of race or gender discrimination, Defendant articulates legitimate, non-discriminatory reasons for the adverse employment action, and Plaintiff fails to establish Defendant's reasons are pretextual. The Court, having considered the parties' submissions and being fully advised in the premises, will grant Defendant's Motion for Summary Judgment.

**I.    BACKGROUND**

Plaintiff Troy Jackson ("Jackson") was employed by the Secretary of the Department of Veterans Affairs (the "Secretary") at its Bay Pines, Florida, Office of Resolution Management (the "ORM"). Doc. 52-8; Doc. 44 at ¶ 1. On December 6, 2012, Jackson contacted an EEO counselor to report discriminatory and retaliatory treatment. Doc. 52-8. Jackson filed a Complaint of Employment Discrimination with the ORM on January 28, 2013. *Id.* at p. 3. Jackson informed the ORM of specific events, spanning a time period from July 23, 2007 to January 16, 2013, that he

1

believed supported his claims. Doc. 44 at ¶¶ 4-5.

The EEOC issued a final decision to Jackson informing him of his right to commence a lawsuit. *Id.* at ¶ 6. Jackson filed the instant lawsuit against the Secretary on July 12, 2017. Doc. 1. Jackson filed an Amended Complaint on December 15, 2017. Doc. 12. The Amended Complaint set forth four counts: "Count I Disparate Treatment Based Upon Race Gender Reprisal and Disability"; "Count II Failure to Provide a Reasonable Accommodations [sic] (Unreasonable Delay)"; "Count III Hostile Work Environment Based Upon Gender"; and "Count IV Reprisal Nonselection." *Id.* at ¶¶ 32-59.

The Court dismissed Jackson's Amended Complaint without prejudice. Doc. 14; Doc. 28. The Court found Jackson's Amended Complaint was akin to a shotgun pleading, was devoid of sufficient factual material, and relied on untimely allegations based on the date Jackson first contacted an EEO counselor. Doc. 28. The Court held Jackson could not use allegations describing occurrences before October 22, 2012 to support his claims because they had not been administratively exhausted. *Id.*

Jackson was then granted leave to file a Second Amended Complaint, which he did on September 10, 2018. Doc. 29. The Secretary then filed a motion to dismiss Jackson's Second Amended Complaint. Doc. 31. Before the Court could rule on that motion, however, Jackson requested that he be allowed to file a Third Amended Complaint to add an additional claim.[1] Doc. 42. The Court permitted Jackson to amend. Doc. 43.

Jackson filed his Third Amended Complaint on May 8, 2019. Doc. 44. Like the complaints before it, the Third Amended Complaint sought injunctive relief enjoining the Secretary from

---

[1] Although Jackson represented in his motion for leave to amend that he wanted only to add an additional claim, Doc. 42 at p. 3, he also took advantage of the opportunity to amend allegations relevant to his other claims. *Compare, e.g.,* Doc. 29 at ¶ 45 (Second Amended Complaint) *with* Doc. 44 at ¶ 48 (Third Amended Complaint).

committing further acts of discrimination, compensation to Jackson for emotional pain and anguish, Jackson's appointment to a position for which he was denied promotion, and attorney's fees and costs. *Id.* at p. 18.

Jackson's Third Amended Complaint set forth eight claims as follows: "Count I Disparate Treatment Based Upon Race in Violation of Title VII of the Civil Rights [Act] of 1964"; "Count II Disparate Treatment Based Upon Gender in Violation of Title VII of the Civil Rights Act of 1964"; "Count III Disparate Treatment Based Upon Disability in Violation of the Rehabilitation Act"; "Count IV Reprisal Because of Participation in Protected Activity in Violation of the Civil Rights Act of 1964"; "Count V Failure to Provide a Reasonable Accommodations [sic] (Unreasonable Delay) in Violation of the Rehabilitation Act"; "Count VI Retaliatory Hostile Work Environment Related to Participation in Protected Activity in Violation of Title VII of the Civil Rights Act of 1964"; "Count VII Reprisal Nonselection Because of His Participation in Protected Activity in Violation of Title VII of the Civil Rights Act of 1964"; and "Count VIII Retaliation in Violation of Title VII of The Civil Rights Act of 1964." *Id.* at ¶¶ 35-111.

The Secretary filed a motion to dismiss Jackson's Third Amended Complaint, which the Court granted in part, dismissing all but two of Jackson's claims. Docs. 46, 51. Counts III through VIII were dismissed, with prejudice, because Jackson continued to rely on untimely allegations and/or failed to allege plausible facts to state a claim for relief. However, the Court did not dismiss counts I and II because Jackson provided relevant and timely allegations that he was subjected to disparate treatment based on race and gender. *Id.* at p. 11.

## II. STATEMENT OF FACTS[2]

Jackson is an African-American male. SF at ¶ 1. Jackson worked as an EEO Administrative Assistant for the ORM. *Id.* at ¶ 2.

Beginning in November 2011, Isabel Simmons was Jackson's first-line supervisor. *Id.* at ¶ 3. From approximately January 2011 until November 2011, Diana Ford was Jackson's first-line supervisor. *Id.* at ¶ 4. Winston Johnson became Jackson's second-line supervisor in 2007. *Id.* at ¶ 5.

On or about November 13, 2012, Simmons and Johnson completed Jackson's performance evaluation and rated him as Fully Successful. *Id.* at ¶ 6. Jackson's 2012 evaluation covered the period from October 1, 2011, to September 30, 2012. *Id.* at ¶ 7.

At the time of his 2012 evaluation, Jackson's co-workers were Michael Michael and Lisa Stephens. *Id.* at ¶ 8. Michael is a white male. *Id.* at ¶ 9. Stephens is an African-American female. *Id.* at ¶ 10. Stephens was a virtual satellite employee based in Lake City. *Id.* at ¶ 11.

Kelly Bonser was Jackson's co-worker until approximately 2007. *Id.* at ¶ 12. Denise Leftridge was Jackson's co-worker until she left the VA in approximately 2009. *Id.* at ¶ 13. Leftridge is an African-American female. *Id.* at ¶ 14. Tatianna Hicks was Jackson's co-worker until 2011. *Id.* at ¶ 15. Hicks is a white or Hispanic female. *Id.* at ¶ 16. Simmons, Jackson's first-line supervisor, never supervised Hicks. *Id.* at ¶ 17.

## III. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.

---

[2] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including depositions and exhibits, as well as the parties' Stipulation of Agreed Material Facts ("SF") (Doc. 55).

Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine" only if a reasonable jury, considering the evidence present, could find for the nonmoving party, and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. However, a party cannot defeat summary judgment by relying upon conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 Fed. Appx. 852, 858 (11th Cir. 2006).

## IV. DISCUSSION

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

Discrimination claims may be established through direct or indirect (circumstantial) evidence. *Solomon v. Jacksonville Aviation Auth.*, 759 Fed. Appx. 872, 874 (11th Cir. 2019). "Direct evidence is evidence, which if believed, proves existence of fact in issue without inference

or presumption." *Burrell v. Bd. of Trs. of Ga. Military Coll.*, 125 F.3d 1390, 1393 (11th Cir. 1997) (quotation marks omitted). But "only the most blatant remarks, whose intent could be nothing other than to discriminate . . . constitute direct evidence of discrimination." *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989). *Compare Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 922 (11th Cir. 2018) (testimony that manager stated he "wanted a Korean in that position" was direct evidence of discrimination based on race) *with Ekokotu v. Boyle*, 294 Fed. Appx. 523, 526 (11th Cir. 2008) (supervisor's alleged statement that she would "get [plaintiff] back" for filing a discrimination claim was not direct evidence as it required an inference and was subject to more than one interpretation).

When a claim is based on circumstantial evidence, courts apply a burden-shifting framework pursuant to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, a plaintiff alleging that unlawful discrimination was the "single-motive" or "true reason" for an adverse employment action generally must first make out a *prima facie* case by demonstrating that: (1) she is a member of a protected class; (2) she was qualified; (3) she suffered an adverse employment action; and (4) the employer treated similarly-situated others outside her protected class more favorably. *Scott v. Sarasota Doctors Hosp., Inc.*, 145 F. Supp. 3d 1114, 1125 (M.D. Fla. 2015), *aff'd*, 688 Fed. Appx. 878, 886 (11th Cir. 2017); *Babb v. Secy., Dept. of Veterans Affairs*, 743 Fed. Appx. 280, 286, n.2 (11th Cir. 2018).

To show a plaintiff and his comparator are similarly situated, plaintiff must show the two are "similarly situated in all material respects." *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1218 (11th Cir. 2019). Whether individuals are similarly situated in all "material respects" turns on "substantive likeness." *Id.* at 1228. Ordinarily, a similarly situated comparator will have engaged in the same basic conduct, have been subject to the same employment policies, have been

under the jurisdiction of the same supervisor, and will share plaintiff's employment or disciplinary history. *Id.* at 1227-28. "[A] plaintiff and her comparators must be sufficiently similar, in an objective sense, that they 'cannot reasonably be distinguished.'" *Id.* at 1228 (quoting *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 230 (2015)). Individuals who can be distinguished—for example, those who are subject to different policies or who have different work histories—are "differently situated in 'material respects,'" and, as such, "[a]n employer is well within its rights to accord different treatment." *Id.*

Once a plaintiff establishes a presumption that the employer unlawfully discriminated against him, the burden of production shifts to the employer to "articulate a legitimate, non-discriminatory reason for the challenged employment action." *Ingram v. Sec'y. of the Army*, 743 Fed. Appx. 914, 916 (11th Cir. 2018) (quotation marks omitted). "If the employer satisfies this burden, the burden shifts back to the plaintiff to show that the proffered reason is merely a pretext for unlawful discrimination." *Id.* "[T]hroughout this entire process, the ultimate burden of persuasion remains on the [plaintiff]." *Sims v. MVM, Inc.*, 704 F.3d 1327, 1333 (11th Cir. 2013).

### A. *McDonnell Douglas* Burden-Shifting Framework

1. Jackson Fails to Establish a *Prima Facie* Case of Disparate Treatment Based Upon Race (Count I) or Gender (Count II)

The Secretary argues, and Jackson does not dispute, that there is no evidence of direct race or gender discrimination in this case. Doc. 52 at p. 7. Therefore, the Secretary argues Jackson must establish a *prima facie* case of race and gender discrimination under *McDonnell Douglas* for his remaining two claims to survive summary judgment. The Secretary contends it is entitled to summary judgment on both of Jackson's remaining claims because Jackson cannot establish a *prima facie* case of race or gender discrimination.

The Secretary does not dispute that Jackson (1) is a member of a protected class and (2) was qualified for his job. Doc. 52 at p. 7. Nor does the Secretary contest that Jackson (3) suffered an adverse employment action in the form of a lower performance rating resulting in lower pay. *Id.* at p. 8. The Secretary does, however, contest Jackson's allegation that (4) the Secretary treated similarly situated others outside Jackson's protected class(es) more favorably. *Id.* at pp. 8-9.

In his Third Amended Complaint, Jackson alleges with respect to his race discrimination claim that "[o]ther Administrative Assistants, that are non-African Americans: Kelly Bosner [sic], and Denise Lefridge [sic] received" an "outstanding" performance rating resulting in additional pay above their normal salary. Doc. 44 at ¶ 41. In his response to the Secretary's Motion for Summary Judgment, Jackson alleges a third employee, Michael, a white male, also received a higher performance rating than Jackson. Doc. 56 at pp. 2, 6; SF at ¶ 9.

The parties agree Leftridge, like Jackson, is African-American. SF at ¶ 14. Because Leftridge is in the same protected class as Jackson, Leftridge is not a proper comparator for Jackson's race discrimination claim. Moreover, record evidence, not disputed by Jackson, shows Leftridge was not similarly situated to Jackson because she had different duties from Jackson and did more work than Jackson. Doc. 52-7 at 44:14-44:21. Additionally, Leftridge left the VA in about 2009, years before Jackson's 2012 evaluation. *Id.* at 48:20-48:23; SF at ¶ 13. Thus, Leftridge had no 2012 evaluation with which to compare to Jackson's 2012 evaluation.

Record evidence, not disputed by Jackson, also shows Bonser was not similarly situated to Jackson. Bonser left the VA in approximately 2007, years before Jackson's 2012 evaluation. Doc. 52-1 at 134:23-135:7; SF at ¶ 12. Like Leftridge, Bonser had no 2012 evaluation with which to compare to Jackson's 2012 evaluation. In addition, Bonser was subject to different performance standards than Jackson. Doc. 52-6 at 300:23-302:13.

Lastly, record evidence, not disputed by Jackson, shows Michael was not similarly situated to Jackson. Michael, an intern, had a different role from Jackson and was subject to different performance standards than Jackson. Doc. 52-2 at 425:12-425:19.

Jackson argues in his response that Michael was similarly situated to Jackson because Michael was late to work as frequently as Jackson was. Doc. 56 at p. 14. In support, Jackson points to testimony from Michael in which Michael stated that he was late to work about three times per week. Doc. 56-2 at 25:2-25:19.

Jackson's argument that Michael was similarly situated to Jackson in one respect is insufficient to create a genuine issue of material fact that the two are "similarly situated in all material respects" in light of the other undisputed differences between them. Jackson and Michael can be reasonably distinguished because they had different performance standards. Doc. 52-2 at 425:12-425:19. Moreover, although record evidence shows Jackson and Michael may have shared similar conduct in terms of tardiness, there is no record evidence that Michael engaged in other behaviors Jackson did that Jackson's supervisors found troublesome. *See infra.* Michael and Jackson are differently situated in material respects; therefore, they are not similarly situated.

In his Third Amended Complaint, Jackson alleges with respect to his gender discrimination claim that "[h]is female co-workers, Kelly Bosner [sic], Denise Lefridge [sic], and Tatiana Hicks, performed their work in a manner very similar to" Jackson and "performed a similar volume and a similar quality of work." Doc. 44 at ¶ 48. Yet, Jackson alleges, Bonser, Leftridge, and Hicks received an "outstanding" performance rating resulting in additional pay above their normal salary while Jackson received only a "fully successful" appraisal. *Id.* at ¶¶ 46-48. In his response to the Secretary's Motion for Summary Judgment, Jackson alleges a fourth female employee, Lisa Stephens, was also a coworker "during the relevant time period." Doc. 56

at p. 3.

As discussed above, record evidence not disputed by Jackson, shows Leftridge was not similarly situated to Jackson because she had different duties from Jackson and did more work than Jackson. Doc. 52-7 at 44:14-44:21. Moreover, Leftridge left the VA in about 2009, years before Jackson's 2012 evaluation. *Id.* at 48:20-48:23. Thus, Leftridge had no 2012 evaluation with which to compare to Jackson's 2012 evaluation.

Also as discussed above, record evidence not disputed by Jackson, also shows Bonser was not similarly situated to Jackson. Bonser left the VA in approximately 2007, years before Jackson's 2012 evaluation. Doc. 52-1 at 134:23-135:7. Like Leftridge, Bonser had no 2012 evaluation with which to compare to Jackson's 2012 evaluation. In addition, Bonser was subject to different performance standards than Jackson. Doc. 52-6 at 300:23-302:13.

Record evidence, not disputed by Jackson, shows Hicks, also, was not similarly situated to Jackson. Hicks left the VA in 2011, before Jackson's 2012 evaluation. Doc. 52-4 at 620:7-620:8. Thus, like Leftridge and Bonser, Hicks would have had no 2012 evaluation with which to compare to Jackson's 2012 evaluation. In addition, Hicks performed "twice as much work as" Jackson and was not supervised by Jackson's first-line supervisor. Doc. 52-7 at 66:4-66:9; Doc. 52-2 at 435:21-435:25.

Jackson argues in his response that Hicks was similarly situated to Jackson because she "had a problem with attendance," "was late to work on a regular basis," and "had a problem with multiple tardies and absences." Doc. 56 at pp. 4, 7. Again, Jackson's argument that another employee was similarly situated to Jackson in one respect is insufficient to create a genuine issue of material fact that the two are "similarly situated in all material respects" in light of the other undisputed differences between them. Jackson and Hicks can be reasonably distinguished

because they performed differently. Doc. 52-7 at 66:4-66:9. Moreover, although record evidence shows Jackson and Hicks may have shared similar conduct in terms of tardiness, there is no record evidence that Hicks engaged in other behaviors Jackson did that Jackson's supervisors found troublesome. *See infra.* Hicks and Jackson are differently situated in material respects; therefore, they are not similarly situated.

In his response, Jackson also mentions that Stephens was his coworker. Jackson does not provide any evidence about how he and Stephens were similarly situated. The Secretary, however, points to evidence showing the two were not similarly situated. Stephens was a virtual satellite employee located hours away. Doc. 52-1 at 39:13-39:16. Further, Stephens was described as an "impressive" and "outstanding" employee who worked at a level above her peers. Doc. 52-4 at 676:6-676:17; Doc. 52-3 at 362:11-362:23. Stephens and Jackson are differently situated in material respects; therefore, they are not similarly situated.

The Secretary has shown there is an absence of evidence to support Jackson's allegation that any employee was similarly situated to him. And Jackson has not designated any specific facts showing a genuine issue of material fact on this point. Because Jackson has failed to show any person was similarly situated to him, Jackson has failed to establish a *prima facie* case of race or gender discrimination.

### 2. The Secretary Articulates Legitimate, Non-Discriminatory Reasons for the Adverse Employment Action

In its Motion for Summary Judgment, the Secretary designates specific record evidence showing the Secretary rated Jackson at a level lower than his coworkers for legitimate, non-discriminatory reasons. The Secretary points to a variety of performance issues. In addition to Jackson's issues with attendance, supervisors and colleagues discussed the following problems.

Jackson's productivity was "minimal" compared to his colleagues. Doc. 52-4 at 474:9-474:20, 486:2-486:15. Jackson did not complete tasks in a timely manner, sometimes taking an hour or two to finish a task that should take 15 minutes, or days to complete tasks that should have been done in minutes. Doc. 52-3 at 314:14-315:10; Doc. 52-2 at 378:2-380:23, 416:15-416:17; Doc. 52-4 at 490:23-490:24, 492:3-492:14. Also, Jackson made excessive personal phone calls during business hours, nearly every day, such that it hurt his productivity and caused errors in his work. Doc. 52-4 at 475:5-475:12, 481:23-483:10; Doc. 52-10 at 19:9-19:17. And Jackson's excessive personal phone calls continued despite counseling from supervisors. Doc. 52-4 at 481:23-482:5; Doc. 52-3 at 322:18-325:1. Moreover, Jackson went over budget when purchasing office supplies and did not order what was needed. Doc. 52-4 at 632:4-634:2; Doc. 52-7 at 23:17-24:5; Doc. 52-2 at 389:22-390:12; Doc. 52-4 at 490:13-491:6.

3. Jackson Does Not Show the Secretary's Reasons are Pretextual

In his response, Jackson argues the Secretary's reasons for rating Jackson's performance as "fully successful" in 2012 are "false and thus unworthy of this [C]ourt's acceptance." Doc. 56 at p. 1. Jackson points to evidence in the record that Jackson's 2012 evaluation contained inaccuracies and relied on past performance evaluations. *Id.* at p. 2; Doc. 56-4 at 419:23-420:22. Record evidence also shows that Jackson's 2012 evaluation was inconsistent with his supervisors' later testimony about his performance. For example, when asked whether Jackson could be counted on to follow through and complete jobs, Jackson's supervisor Isabel Simmons testified "no." Doc. 56 at p. 5 (citing Doc. 56-4 at 416:1-419:24). Yet, Jackson's 2012 performance evaluation provided that Jackson could be counted on to follow through. *Id.*

Although there is evidence of some specific statement inconsistency, there is no evidence that Jackson's performance warranted a rating above fully successful. As discussed above,

supervisors and colleagues testified that Jackson was routinely late to work, had minimal productivity, did not complete tasks in a timely manner, made excessive personal calls during work hours even after being told that was inappropriate, and did not properly perform the task of ordering supplies. The evidence shows that, if anything, Jackson's performance rating of "fully satisfactory" was to Jackson's "advantage," and that he could have been given a lower performance rating. Doc. 52-4 at 488:5-488:11.

Whether Jackson's performance review and his supervisors' comments are inconsistent, though, is not dispositive. To show pretext, a plaintiff must show "both that the reason was false and that discrimination was the real reason." *Lopez v. AT&T Corp.*, 457 Fed. Appx. 872, 874 (11th Cir. 2012). A plaintiff must do more than quarrel with an employer's reasoning to show that a legitimate, nondiscriminatory reason amounts to a pretext. *Chapman v. Al Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (A plaintiff cannot "substitute his business judgment for that of the employer."). Where an employer articulates a legitimate, nondiscriminatory reason for its actions, a "plaintiff must meet the reason proffered head on and rebut it." *Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1308 (11th Cir. 2007). "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered . . . extensive evidence of legitimate, non-discriminatory reasons for its actions." *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (quotation marks omitted, alterations in original).

In his response, Jackson does not designate any specific facts showing a genuine issue of material fact as to whether the Secretary engaged in race or gender discrimination. The only discussion of race or gender discrimination is in the allegations in Jackson's Third Amended Complaint and in the conclusions stated in Jackson's response. Because Jackson cites no evidence

that the Secretary gave him a lower rating based on race or gender, Jackson cannot show the Secretary's explanation for the rating is pretext.

### B. No Genuine Issue of Material Fact as to Race or Gender Discrimination

As Jackson points out toward the end of his response, satisfying the *McDonnell Douglas* framework is not the only way in which a plaintiff can survive summary judgment in an employment discrimination case. *Smelter v. Southern Home Care Servs., Inc.*, 904 F.3d 1276, 1288, n.4 (11th Cir. 2018) ("We have said that a plaintiff need not establish each of the *McDonnell Douglas* elements to survive summary judgment; instead, she may do so where she presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." (quotation marks omitted)).

Jackson alleges in his response that summary judgment is improper "because [Jackson] has demonstrated that he was treated differently than others that are not like him as it relates to race or gender." Doc. 56 at p. 20. Jackson further argues that because the Secretary's proffered explanations are "muddled," they "at least raise the prospect that a jury question actually exists." *Id.* Jackson does not cite to any record evidence in support of this argument.

Jackson's argument fails. As discussed above, Jackson does not designate any specific facts showing a genuine issue of material fact as to whether the Secretary engaged in race or gender discrimination. Jackson's argument does not present a convincing mosaic of circumstantial evidence that would allow the jury to infer intentional discrimination.

### V. CONCLUSION

The Secretary has shown there is an absence of evidence to support Jackson's allegation that any employee was similarly situated to him. And Jackson has not designated any specific facts showing a genuine issue of material fact on this point. Because he has failed to show any

person was similarly situated to him, Jackson has failed to establish a *prima facie* case of race or gender discrimination. Even if Jackson had presented such a *prima facie* case, however, the Secretary articulated legitimate, non-discriminatory reasons for rating Jackson's performance as it did. And Jackson failed to show such reasons were pretextual. Jackson also failed to present a convincing mosaic of circumstantial evidence that would allow the jury to infer intentional discrimination. For all of these reasons, as a matter of law, the Secretary is entitled to summary judgment in its favor.

Accordingly, it is **ORDERED:**

1. Defendant's Motion for Summary Judgment (Doc. 52) is **GRANTED.**

2. The Clerk is directed to enter a judgment in favor of Defendant, Secretary of the Department of Veterans Affairs, and against Plaintiff, Troy Jackson. The Clerk is further directed to close this case.

**DONE AND ORDERED** in Tampa, Florida on March 3, 2020.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any